J-S57030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: I.M.C.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.L., MOTHER | No. 795 EDA 2014 |

Appeal from the Decree entered February 7, 2014,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): CP-51-AP-0000381-2013;
FID: 51-FN-333689-2009

BEFORE:    DONOHUE, MUNDY, and STABILE, JJ.

MEMORANDUM BY MUNDY, J.:                          **FILED JANUARY 09, 2015**

Appellant, C.L. (Mother), appeals from the February 7, 2014 decree involuntarily terminating her parental rights to her daughter, I.M.C.L.[1]  Upon careful review, we affirm.[2]

On June 28, 2013, R.L., the legal guardian and maternal cousin of I.M.C.L., filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), and (b).  On the same date, R.L. filed a petition for adoption.  On February 7, 2014, the trial court held a hearing on the involuntary termination petition, during which R.L.

---

[1] The record reveals that I.M.C.L. was born in January 2004.

[2] By separate decree entered on February 7, 2014, the trial court involuntarily terminated the parental rights of V.T.C.M. (Father), the putative father of I.M.C.L.  Father did not file a notice of appeal, and he is not a party to this appeal.

testified, and Mother testified by telephone from prison. The testimonial evidence revealed as follows.

Mother is the maternal aunt of R.L. N.T., 2/7/14, at 12. At the time of I.M.C.L.'s birth, R.L., who was thirteen years old, lived off and on at Mother's house, where she assisted in the care of I.M.C.L. *Id.* at 12-13. Specifically, R.L. testified she took care of I.M.C.L. at night because Mother had a drug addiction that caused her to sleep a lot. *Id.* at 13-14. At a time unspecified in the record but, as best as we can determine was within the first year of I.M.C.L.'s life, R.L. moved to her father's home. R.L. took I.M.C.L. with her because, in part, Mother's "house was cold, there was no heat …." *Id.* at 13. R.L. testified Mother saw I.M.C.L. on the weekends. *Id.* at 15.

Thereafter, the trial court adjudicated I.M.C.L. dependent. The Philadelphia Department of Human Services, Children and Youth Division (DHS), transferred custody of I.M.C.L. to her paternal grandmother, where she remained for approximately one and one-half years, until she was age three. *Id.* at 15-16. At that time, R.L. unilaterally took custody of I.M.C.L. *Id.* at 16-17. R.L. testified that, in late 2007, DHS inspected her home and permitted I.M.C.L. to remain with her. *Id.* at 17-18. By order dated May 19, 2008, the trial court granted R.L. temporary custody of I.M.C.L. *Id.* at 20; *see also* R.L.'s Exhibit A. DHS scheduled supervised visits for Mother,

but R.L. testified Mother attended no more than three visits. N.T., 2/7/14, at 21.

By order dated April 6, 2010, the trial court granted R.L. permanent legal custody of I.M.C.L. and discharged I.M.C.L.'s dependency. *Id.* at 22-23; *see also* R.L.'s Exhibit B. By separate order dated April 6, 2010, the trial court granted Mother unsupervised visits with I.M.C.L. on Saturdays from 12:00 p.m. to 7:00 p.m. N.T., 2/7/14, at 23-24; *see also* R.L.'s Exhibit C. R.L. testified that Mother again participated in no more than three visits, all within approximately the first month of the date of the order. N.T., 2/7/14, at 24, 27.

R.L. testified that, in 2011, I.M.C.L. saw Mother approximately four times. *Id.* at 31. R.L. testified I.M.C.L. saw Mother "numerous times" in 2012, including, but not limited to, at Thanksgiving, Christmas, and at the funeral of R.L.'s grandfather. *Id.* at 31-32. R.L. testified I.M.C.L. saw Mother less frequently in 2013, because Mother was incarcerated for seven months. *Id.* at 32. R.L. testified that Mother was released from prison on October 29, 2013, and that she saw I.M.C.L. three times after that, the last time being at Christmas of 2013. *Id.* at 44, 46.

At the time of the termination hearing, Mother testified from the Riverside Correctional Facility, where she had been incarcerated for more than 30 days on charges relating to aggravated assault. *Id.* at 55, 60. Further, the record reveals that, in 2013, Mother plead guilty to crimes

involving theft and simple assault. R.L.'s Exhibit D. Mother received a sentence of three years of probation for theft, and two years of probation for simple assault, to run concurrently. *Id.*

By decree dated and entered on February 7, 2014, the trial court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), and (b). On March 7, 2014, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i). On May 14, 2014, the trial court filed its Rule 1925(a) opinion.

On appeal, Mother presents the following question for our review.

> Did the [t]rial [c]ourt err in terminating the parental rights of [Mother] in that clear and convincing evidence for terminating her parental rights did not exist?

Mother's Brief at 6.

We review the termination decree according to the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re R.J.T.*, 9 A.3d 1179, 1190 ([Pa.] 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; [*In re*] *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different

conclusion. *Id.*; *see also Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 ([Pa.] 2011); *Christianson v. Ely*, 838 A.2d 630, 634 ([Pa.] 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [*supra*]. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 ([Pa.] 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826–827 (Pa. 2012) (parallel citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination

- 5 -

delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007), *citing* 23 Pa.C.S.A. § 2511. The burden is on the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, the trial court terminated Mother's parental rights pursuant to the following provisions.

### § 2511. Grounds for involuntary termination

**(a) General Rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the

conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

…

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

With respect to Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." **In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008), *citing* **In re Adoption of R.J.S.**, 901 A.2d 502, 510 (Pa. Super. 2006).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id.*, *quoting* **In re Adoption of Charles E.D.M.**, 708 A.2d 88, 92 (Pa. 1998).

This Court has explained the definition of "parental duties," as follows.

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with … her physical and emotional needs.

**In re B.,N.M.**, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

In **S.P.**, our Supreme Court discussed **In re Adoption of McCray**, 331 A.2d 652 (Pa. 1975), a case wherein the Court considered the issue of the termination of parental rights of incarcerated persons involving abandonment, which is currently codified at Section 2511(a)(1). The **S.P.** Court stated the following.

> Applying in **McCray** the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." We observed that the father's incarceration made his performance of this duty "more difficult."
>
> …
>
> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

**S.P.**, *supra* at 828*, quoting* **McCray**, *supra* at 655 (citations omitted).

Additionally, we note the following.

> In order to terminate parental rights pursuant to 23 Pa.C.S.A § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence

- 9 -

necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).  The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.  *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Our Supreme Court also addressed the relevance of incarceration in termination decisions under Section 2511(a)(2) as follows.

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*S.P.*, *supra* at 829.

With respect to Section 2511(b), the requisite analysis is as follows.

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child."  In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently

- 10 -

severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

On appeal, Mother acknowledges that she "had a long history of drug abuse," and that her visits with I.M.C.L. "were sporadic mainly due to periods of incarceration …." Mother's Brief at 9. Nevertheless, Mother argues that she did her best to maintain contact with I.M.C.L., including sending cards and letters and providing money. *Id.* Thus, Mother contends she did not neglect her parental responsibilities. For the following reasons, we disagree.

The testimonial evidence demonstrates that Mother has displayed only passive interest in the development of I.M.C.L. throughout her ten years of life. Indeed, Mother sporadically saw I.M.C.L., provided infrequent gifts or money, and did not send any letters to I.M.C.L. prior to the filing of the termination petition. N.T., 2/7/14, at 36-37. In fact, R.L. testified that Mother only sent one card to I.M.C.L. while she was in prison, and this was after the filing of the termination petition. *Id.* at 46; *see also* 23 Pa.C.S.A. § 2511(b) (providing that "[w]ith respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated

- 11 -

subsequent to the giving of notice of the filing of the petition"). The testimonial evidence overwhelmingly demonstrates that, for the vast majority of I.M.C.L.'s life, R.L. provided for I.M.C.L.'s needs because Mother failed to fulfill her parental obligations. N.T., 2/7/14, at 36-37. Pursuant to the foregoing case law, we conclude that Mother's limited involvement with I.M.C.L. does not satisfy her affirmative parental duty to I.M.C.L. Therefore, we conclude that the trial court did not abuse its discretion in finding that Mother evidenced a settled purpose of relinquishing parental rights or refused or failed to perform her parental duties far in excess of the requisite six-month period preceding the filing of the termination petition pursuant to Section 2511(a)(1).

Likewise, we conclude that the trial court did not abuse its discretion in finding that Mother's conduct warrants termination under Section 2511(a)(2). The record demonstrates that Mother's repeated and continued incapacity due to drug addiction and incarceration has caused I.M.C.L. to be without Mother's essential parental care, control or subsistence necessary for her physical or mental well-being for her entire life. Indeed, I.M.C.L., age ten at the time of the hearing, has been cared for most of her life by R.L. Further, the causes of Mother's incapacity cannot or will not be remedied as she has had repeated incarcerations up to and including the time of the hearing.

With respect to Section 2511(b), Mother argues that terminating her parental rights will not serve the needs and welfare of I.M.C.L. Mother's Brief at 9. Nevertheless, in assessing I.M.C.L.'s needs and welfare, the record reveals that R.L. testified that I.M.C.L. receives therapeutic services and takes medication. N.T., 2/7/14, at 42. R.L. testified that Mother has not had any involvement with I.M.C.L.'s therapeutic services. *Id.* Further, R.L. testified that I.M.C.L. desires to be adopted. In support of these assertions, R.L. testified as follows.

> Q. Why did you ... pursue these adoption proceedings, even though [I.M.C.L.] still has contact with her mother?
>
> A. Me and [I.M.C.L.] talk a lot and she wanted to know why wasn't she my real child. And why couldn't I adopt her like her older sister was adopted.

*Id.* at 41-42.[3] In addition, the Child Advocate, on the record in open court, made an offer of proof that, if I.M.C.L. were to testify, she would state she "wants to be adopted by [R.L.]." *Id.* at 70.

With respect to the nature and status of the parent-child bond, R.L. testified that I.M.C.L. shares this bond with her and not with Mother. *Id.* at 53-54. There is no evidence in the record to indicate that I.M.C.L. will be negatively affected by the termination of Mother's parental rights. Rather,

---

[3] R.L. testified that Mother has an older daughter who was adopted by a relative, and two older sons, one who is in the custody of R.L.'s grandmother, and the other is in the custody of a family friend. N.T., 2/7/14, at 39-40.

the testimonial evidence indicates that the involuntary termination of Mother's parental rights will serve the developmental, physical and emotional needs and welfare of I.M.C.L., who desires permanency and stability with R.L.

Based on the foregoing, we conclude the trial court did not abuse its discretion when it involuntarily terminated Mother's parental rights. **See** **S.P.**, **supra** at 826. Accordingly, we affirm the trial court's February 7, 2014 decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2015